IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 16-cv-03206-RBJ-SKC

JOHN CLARK BRIDGES,

      Plaintiff,

v.

C. FERNANDEZ, Lieutenant,
D. BEHLE, Officer,
J. LYNCH, Officer,
JACK FOX, Complex Warden, and
JOHN DOE, ADX Warden

      Defendants.

---

## ORDER ADOPTING MAGISTRATE JUDGE RECOMMENDATION

---

This matter is before the Court on Defendants D. Behle, C. Fernandez, J. Lynch, and Jack Fox's motions to dismiss [ECF Nos. 122, 123] and the recommendation of Magistrate Judge S. Kato Crews [ECF No. 137] that the Court grant the motions for failure to exhaust administrative remedies. The recommendation is incorporated herein by reference. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). After reviewing the briefings and relevant law, I am not convinced that Mr. Bridges has failed to exhaust administrative remedies, but I nevertheless agree with the recommendation that the motions to dismiss [ECF Nos. 122, 123] should be GRANTED.

### I.      Background

Magistrate Judge Crews provided a summary of the procedural and factual background of this case in his Recommendation. *See* ECF No. 137 at 1-5. To briefly highlight the relevant

facts, John Clark Bridges is an inmate in the custody of the Bureau of Prisons at the United

States Penitentiary Administrative Maximum ("ADX") facility.  Defendants Behle, Fernandez,

and Lynch are correctional officers, and Defendant Fox is the warden at ADX.  Plaintiff

originally filed a complaint alleging excessive force based upon a sexual assault, verbal taunts

and the use of pepper spray.  Following the screening process undertaken pursuant to 28 U.S.C. §

1915(e)(2)(B), Judge Babcock dismissed Plaintiff's excessive force claims based on the alleged

sexual assault for failure to state a claim under the Eighth Amendment and construed the verbal

taunts as part of Plaintiff's claim that Defendants used excessive force in deploying the pepper

spray.  ECF No. 17 at 4-6.

This case was then assigned to this Court and Magistrate Judge Crews.  Plaintiff's Fourth

Amended Complaint [ECF No. 118], the operative complaint here, asserts six claims pursuant to

*Bivens v. Six Unknown Named Agents of Fed. Bureau of* Narcotics, 403 U.S. 388 (1971), and 28

U.S.C. §1331 for relief against Defendants Fernandez, Behle, Lynch and Fox.  The claims are:

(1) excessive force against Defendants Fernandez, Behle and Lynch; (2) deliberate indifference

to a substantial risk of death against Defendants Fernandez, Behle and Lynch; (3) failure to

protect against Defendants Fernandez, Behle and Lynch; (4) failure to intervene against

Defendants Behle and Lynch; (5) failure to property instruct, supervise, control and discipline

against Defendant Fox and John Doe, who plaintiff alleges is also a warden; and (6) deliberate

indifference to inflict severe psychological torment and distress against Defendants Fernandez,

Behle and Lynch.  Defendants filed the pending Motions to Dismiss pursuant to Federal Rule of

Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  ECF No.

122, 123.  Magistrate Judge Crews reviewed the motions to dismiss and recommended that they

be granted.  ECF No. 137.  Mr. Bridges timely objected to Judge Crews' recommendation, and the defendants filed a timely response.  ECF Nos. 138, 139.

## II.  Standard of Review

### A. Magistrate Judge Crews' Recommendation.

When a magistrate judge makes a recommendation on a dispositive motion, the district court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).  An objection is sufficiently specific if it "focus[es] the district court's attention on the factual and legal issues that are truly in dispute." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  In the absence of a timely and specific objection, "the district court may review a magistrate's report under any standard it deems appropriate."  *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991).

Mr. Bridges timely and sufficiently objected in part to Magistrate Judge Crews' recommendation, arguing that he did exhaust his administrative remedies for claims one and four.  ECF No. 138.  Mr. Bridges does not object to Magistrate Judge Crews' conclusion that he failed to exhaust his administrative remedies with respect to claims two, three, five, and six (the claims related to defendants' alleged statements telling Mr. Bridges to hang himself and against Warden Fox for failure to supervise).

After reviewing the applicable law, briefings, and the report and recommendations, I agree with Magistrate Judge Crews' conclusion that Mr. Bridges did not exhaust administrative remedies with respect to claims two, three, five, and six and adopt the report and recommendation of Magistrate Judge Crews dismissing these claims without prejudice and without further discussion.  I now review the dismissal of claims one and four, related to the use of pepper spray, de novo.

**B. Rule 12(b)(6) – Motion to Dismiss for Failure to State a Claim Standard.**

Because my conclusion is based on failure to state a claim, I address that standard. To survive a Rule 12(b)(6) motion to dismiss, the complaints must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002), purely conclusory allegations are not entitled to be presumed true, *Iqbal*, 556 U.S. at 681. However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *See, e.g.*, *Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008). The Court may properly consider attached exhibits and documents incorporated into the complaint by reference in evaluating a motion to dismiss, and allegations that contradict the contents of the complaint's exhibits or document incorporated therein by reference are not entitled to a presumption of truth. *Smith v. United States*, 561 F. 3d 1090, 1098 (10th Cir. 2009); *Rader v. Citibank*, 2014 WL 5152357, at *2 (D. Colo. Oct. 14, 2014). For a *Bivens* claim, Plaintiff must plead specific facts showing that each Defendant personally engaged in conduct that violated Plaintiff's constitutional rights. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Steele v. Fed. Bur. of Prisons*, 355 F.3d 1204, 1214 (10th Cir. 2003); *Kite v. Kelly*, 546 F.2d 334, 338 (1976).

## III. Analysis

### A. Failure to Exhaust Claims One and Four

Mr. Bridges argues that this Court should not dismiss claims one and four for failure to exhaust administrative remedies.  First, Mr. Bridges argues that defendants did not raise exhaustion as an affirmative defense.  He is correct that failure to exhaust administrative remedies is an affirmative defense.  *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007).  Defendants have not yet filed an answer, and therefore, they have not asserted affirmative defenses as such.  Nevertheless, if it is clear enough on the face of the complaint that an inmate has not exhausted administrative remedies, the Court can consider it.  *See id.*  Here, Defendants argue exhaustion in both motions to dismiss, implicitly arguing that Mr. Bridges' exhaustion problem is clear enough to address at this time.  *See* ECF No. 122 at 16 ("III. A. Plaintiff failed to Exhaust His Administrative Remedies"); ECF No. 123 at 12 ("III. Plaintiff Failed to Exhaust His Administrative Remedies Before Filing Suit.").  It is a moot point, however, because I find that as to claims one and four, Mr. Bridges is not at fault for his defects in exhaustion.

The Bureau of Prisons has a four-tiered Administrative Remedy Program for inmate grievances.  28 C.F.R. §542.10, *et seq*.  Step one is informal resolution with prison staff, provided when the prisoner requests a form commonly known as BP-8.  *See* 28 C.F.R. § 542.13(a).  Second, if this form of resolution is not successful, the prisoner may submit a formal inquiry, known as a BP-9 request to the warden.  28 C.F.R. § 542.14.  Third, the prisoner can appeal to the Regional Director by filing a Regional Office Administrative Remedy Appeal, also

known as a BP-10 request. 28 C.F.R. § 542.15(a). If denied, then fourth, the prisoner can file a BP-11 with the Bureau of Prison's Office of General Counsel. *Id.*

It is not always necessary, however, to pursue all four steps. An inmate may skip steps one and two and file a grievance directly with the Regional Director "[i]f the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution." 28 C.F.R. § 542.14(d)(1). If the Regional Administrative Remedy Coordinator determines that the issue is actually not sensitive, "the inmate *shall* be advised in writing of that determination, without a return of the Request. The inmate may pursue the matter by submitting an Administrative Remedy Request locally to the Warden. The Warden shall allow a reasonable extension of time for such resubmission." 28 C.F.R. §542.14(d)(1) (emphasis added).

With the pepper spray incident, which is the focus of claims one and four, Mr. Bridges skipped steps one and two and went straight to step three. He sent an emergency sensitive grievance (a BP-10) to the Regional Director on December 14, 2016. ECF No. 118 (Fourth Amended Complaint) at 21. In this grievance Mr. Bridge describes an incident that underlies both Mr. Bridges' claims of excessive force from sexual abuse, which Judge Babcock dismissed, and his claims of excessive force from the pepper spray. However, Mr. Bridges alleges that he never received a response as to whether the Regional Administrative Remedy Coordinator accepted his sensitive emergency request. ECF No. 118 at 21. Defendants disputed in pleadings prior to the Fourth Amended Complaint that Plaintiff ever submitted the Form BP-10. ECF No. 64 at 11. But at the motion to dismiss stage, I will accept Mr. Bridges allegation that he submitted the Form BP-10 (a copy of which he provided with his Fourth Amended Complaint).

Consistent with their position that Mr. Bridges did not submit a Form BP-10, defendants do not contend that Mr. Bridges received a response.

Mr. Bridges alleges that without a response from the Regional Administrative Remedy Coordinator, prison officials denied him access to a BP-11 form, so he was unable to continue in the administrative remedy process. ECF No. 118 at 25 ("I was told by the aforementioned prison officials that they couldn't give me a BP-11 form. They said it had to come from the Regional Director, attached to his response.").

Defendants also argue that Plaintiff did not contend that the pepper-spray incident *separately* qualified as "sensitive," absent his allegations of sexual abuse, under the applicable regulations or program statements, and therefore should not be considered under these regulations for "sensitive" grievances. ECF No. 139 at 3. The BOP Program Statement asserts that if an inmate "includes on a single form multiple unrelated issues, the portion of the administrative remedy regarding allegations of sexual abuse should be accepted and processed. The inmate shall be advised to use a separate form for each unrelated issue." BOP Program Statement 1330.18, *Administrative Remedy Program* at 13. However, the sexual abuse and pepper spray claims all arise from the same incident, and Mr. Bridges' stated that he feared retaliation for filing a complaint about this incident. ECF 119 at 7. If Mr. Bridges feared retaliation for filing a complaint about an incident, then requiring Mr. Bridges to file a complaint at a local level for some of the factual events (here, the pepper spray) though not other events (the sexual abuse) would still expose him to a risk of retaliation.

Defendants agree that sensitive grievance procedures are not limited to sexual abuse complaints. ECF No. 139 at 3 n.2. Though in some pleadings Mr. Bridges justifies his use of the "sensitive" grievance process only by stating that his claim includes allegations of sexual

assault, in other pleadings, Mr. Bridges refer to the pepper spray and sexual assault together as both justifying a sensitive grievance. *See, e.g.*, ECF 138 at 2 ("I wrote the OIG about both the pepper spray and groping incidents, calling them "acts of retaliation." The inmate handbook instructs prisoners with sensitive issues to write the OIG (along with filing a sensitive grievance).").

Construing plaintiff's allegations and reasonable inferences in favor of the plaintiff, and construing the pleadings of the plaintiff liberally as a pro se litigant, I find that Mr. Bridges has claimed that the application of pepper spray in this instance justified his use of the sensitive grievance procedure. Whether or not the pepper spray incident is actually "sensitive," the regulations permit an inmate to send a grievance to the Regional Administrative Remedy Coordinator directly if he *reasonably believes* his issue is sensitive. Once an inmate submits such a grievance, he is entitled to a written notification as to whether the Regional Administrative Remedy Coordinator accepted his grievance as sensitive or not. 28 C.F.R. §542.14(d)(1).

Mr. Bridges states that he "wrote the DHO, too." The fact that Mr. Bridges was willing to discuss this incident with a disciplinary hearing officer –an officer at the local institution -- weighs against a finding that the issue was in fact sensitive. However, regardless of whether the Regional Administrative Remedy Coordinator ultimately determined that the issue was sensitive, the regulations clearly entitle Mr. Bridges to a written notification of that decision and directions to submit an Administrative Remedy Request locally to the Warden with a reasonable extension of the time limits for resubmission. Because the Court must "ensure that any defects in exhaustion [are] not procured from the action or inaction of prison officials," *Aquilar-*

*Avellaveda,* 478 F.3d at 1225, I do not find that Mr. Bridges' claims one and four must be dismissed at this stage for failure to exhaust administrative remedies.

**B. Qualified Immunity Claim One**

That conclusion is not, however, the end of the story. Defendants also moved to dismiss claims one and four against the individual defendants based on qualified immunity. Qualified immunity shields federal officials from money damages unless a plaintiff pleads facts showing "(1) that [each] official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). "[I]f a reasonable officer might not have known for certain that the conduct was unlawful then the officer is immune from liability." *Ziglar v. Abbasi*, 137 S, Ct, 1843, 1868 (2017). In analyzing Mr. Bridges' Fourth Amended Complaint, the exhibits and the applicable law, I conclude that the defendants' actions in using the pepper spray did not violate a clearly established Eighth Amendment right to be free from excessive force. Because of this conclusion, I need not address the arguments about the creation of a new *Bivens* remedy in this context.

The Constitution prohibits the excessive use of force against a prisoner.

> To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety...The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense.

*Whitley v.* Albers, 475 U.S. 312, 319 (1986). In the Eighth Amendment context, "an excessive force claim involves two prongs: (1) an objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and (2) a subjective prong under which the plaintiff must show that the officials acted with a sufficiently culpable state of mind." *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003). The objective component "is

contextual and responsive to contemporary standards of decency." *Id.* at 1212 (internal

quotations and citations omitted). The subjective component "turns on whether force was

applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for

the very purpose of causing harm." *Id.*

However, the "core judicial inquiry" is the latter because "when prison officials

maliciously and sadistically use force to cause harm, contemporary standards of decency always

are violated." *Hudson v. McMillian*, 503 U.S. 1, 7-9 (1992). "Not every push or shove, even if it

may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's

constitutional rights." *Hudson*, 503 U.S. at 9. "Thus, even if a use of force is deemed

unnecessary after the fact, if it was both de minimus and 'not of a sort repugnant to the

conscience of mankind,' it will not sustain an excessive-force claim." *Marshall v. Milyard*, 415

F. App'x 850, 853 (10th Cir. 2011) (unpublished) (quoting *Hudson*, 503 U.S. at 10).

Mr. Bridges alleges that "Defendant Lt. Fernandez ordered Defendant Behle to pepper-

spray me, knowing that it would cause undue harm to me. And Behle willingly followed his

order, knowing that the order was unjust . . . ." ECF No. 118 at 14. Mr. Bridges states that the

application of pepper spray was without cause while he was waiting to be cuffed. The Discipline

Hearing Officer Report from this incident, attached as an exhibit to Plaintiff's Complaint, ECF

No. 119, describes the events leading up to the use of the pepper spray. This incident report,

subsequently expunged due to conflicting evidence, indicates that Lt. Fernandez went to Mr.

Bridges cell "to deescalate an unruly inmate," where he found that Mr. Bridges appeared to be

agitated. It continues that Mr. Bridges began tearing up hand written letters upon seeing Lt.

Fernandez. Lt. Fernandez states he directed Mr. Bridges to stop destroying the letters, an order

he did not follow. He indicates that Mr. Bridges threw a cup at the officers.

In this report, Officer Behle states that after Mr. Bridges "grabbed a cup of unknown liquid substance and attempted to throw the liquid onto staff," he (Officer Behle) displayed his pepper spray, announced "OC. OC. OC.," and "delivered a 2 second burst towards the facial area."  ECF No. 122 Ex. 1 at 6.[1]  Mr. Bridges states that immediately following the pepper-spray incident he was taken to an observation cell and seen by a medical provider.  Mr. Bridges does not note any injuries he suffered at the time.

In the hearing following this incident Mr. Bridges denied the charge that he threw anything at the staff, and he alleged that staff sprayed him with the pepper spray without cause.  Mr. Bridges does not deny that he was tearing up papers or that he disobeyed an order to cease destroying the papers.  Regardless whether Mr. Bridges threw something at the officers or only picked up a cup, and whether he appeared agitated or not, a number of facts support a finding that even if the force was mistakenly applied in retrospect, it was not applied maliciously or sadistically.

The DHO report notes Mr. Bridges' admission that he had physically assaulted officers in the past, ECF No. 119 at 5.  In his Complaint, Mr. Bridges states that, before the incident, he told two correctional officers that the only reason they act disrespectfully toward him "is because they're safe behind the bars."  Mr. Bridges denies that this statement was intended as a threat.  However, correctional officers could reasonably understand such a statement to be a threat and thus be more likely to interpret Mr. Bridges' behavior as potentially threatening.

---

[1] Mr. Bridges refers to this Discipline Hearing Officer Report (DHO report) in his Complaint, and Defendants attach a true and correct copy of the Report to their motion to dismiss.  The incident report filed against Mr. Bridges was expunged.  Mr. Bridges disputes the accuracy of some of the information in the DHO report, calling it a "false witness report," but he does not dispute that this is an authentic copy of the report containing statements made by the officer and documenting the event and the subsequent hearing that occurred.

Mr. Bridges also denies that there was ever any disturbance or unruliness for Lt. Fernandez to deescalate. Assuming, without deciding, that the application of pepper spray was mistaken and unnecessary here, Mr. Bridges has not overcome the presumption of qualified immunity. He has not shown that a reasonable officer would have known that the application of a single burst of pepper spray in response to an inmate's ignoring an order to cease destroying papers violated a clearly established constitutional right.

Case law from the Tenth Circuit supports this conclusion. For example, in *Gargan v. Gabriel,* the Tenth Circuit held that the application of four cans of pepper spray while extracting plaintiff from the cell while "unarmed, alone and secured in a segregation cell" was insufficient to support an inference that officers used pepper spray "unnecessarily, excessively, or wantonly" where there was no discussion of the need, or lack thereof, to use pepper spray in extracting the plaintiff from his cell. 50 F. App'x 920, 923 (10th Cir. 2002) (unpublished). In *Green v. Corrections Corp. of Am.*, the Tenth Circuit found that an officer had not used excessive force in breaking up a fight where the officer pepper sprayed the plaintiff who was complying with an order to cease fighting. The officer used the pepper spray on the plaintiff in response to another inmate's punching the plaintiff in the face and did nothing to the aggressor inmate. *Green v. Corr. Corp. of Am.*, 401 F. App'x 371, 373 (10th Cir. 2010) (unpublished). The Tenth Circuit held that the plaintiff's allegations established that the officer had reason to use some force, pointing to the fact that plaintiff admitted to physically restraining another prisoner before the application of pepper spray. In coming to this conclusion, the Tenth Circuit highlighted that "prison official[s] may use reasonable force to 'maintain or restore discipline.'" 401 F. App'x at 376 (citing *Whitley v. Albers*,475 U.S. 312, 320 (1986)).

Here, whether Mr. Bridges assaulted an officer prior to the pepper spray is disputed. It is not disputed that he had physically assaulted officers in the past, had recently communicated statements understood by the officers to be threats, and that he was destroying papers upon the arrival of officers to his cell and ignored an order to cease destroying those papers. Even if the application of pepper spray was unnecessary in hindsight, other cases in the Tenth Circuit demonstrate that it did not violate a clearly established constitutional right.

### C. Qualified Immunity Claim Four

Mr. Bridges brings claim four against Defendants Behle and Lynch for failure to intervene. An officer can be responsible for another's use of excessive force if he knew that the officer was about to use constitutionally impermissible force and had a "realistic opportunity" to prevent it. *Jones v. Norton*, 809 F.3d 564, 576 (10th Cir. 2015). However, without an underlying claim for unconstitutional use of excessive force, there can't be a claim for failure to intervene. Therefore, I also dismiss claim four based on qualified immunity.

## ORDER

The Court has read the pleadings, recommendations and objections and has conducted a de novo review of claims one and four. The Court has also reviewed the magistrate judge's recommendations for claims two, three, five and six (to which no objection was made) and concludes that the magistrate judge's recommendations are well grounded in facts and law.

The Court accepts and adopts the recommendations for claims two, three, five and six. The Court also grants the motions to dismiss [ECF No 122, 123] for claims one and four based on qualified immunity. The individual capacity defendants' motion to dismiss [ECF No. 122], is GRANTED and Warden Fox's motion to dismiss [ECF No. 123] is also GRANTED.

Dated this 16th day of November, 2018.

By the Court:

R. Brooke Jackson
United States District Judge